UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

BERNICE K. PETERS,

                Plaintiff,                    Civil Action No. 14-11388
                                                Honorable George C. Steeh
          v.                          Magistrate Judge David R. Grand

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 13]**

      Plaintiff Bernice K. Peters ("Peters") brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.      RECOMMENDATION**

      For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Peters is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [13] be DENIED, Peters' motion [11] be GRANTED IN PART to the extent it seeks remand, and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Recommendation.

II.     REPORT

    A.      Procedural History

    On January 14, 2011, Peters filed for DIB, alleging an onset date of March 21, 2008.  [Tr.

93-95, 101].[1]   This application was denied.  [Tr. 54-57].  Peters filed a timely request for an

administrative hearing on June 15, 2011.  [Tr. 58-59].  A hearing was held on November 17,

2011, before ALJ Oksana Xenos.  [Tr. 23-41].  Peters, who was represented by attorney Mark

Anthony Aiello, testified, as did vocational expert Harry Cynowa.  [*Id.*].  On December 19, 2011,

the ALJ issued a written decision finding that Peters was not disabled.  [Tr. 12-19].  On January

29, 2014, the Appeals Council denied review.  [Tr. 1-3].  Peters filed for judicial review of the

final decision on April 4, 2014.  [1].

    B.      Framework for Disability Determinations

    Under the Act, DIB is available only for those who have a "disability."  *See Colvin v.*

*Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can be
> expected to result in death or which has lasted or can be expected to last
> for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be

determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful
> activity, benefits are denied without further analysis.
>
> Step Two:   If the claimant does not have a severe impairment or
> combination of impairments that "significantly limits . . . physical or
> mental ability to do basic work activities," benefits are denied without

---

[1] At the hearing before the ALJ, Peters' counsel requested to amend the alleged onset date from
March 21, 2008 to January 22, 2010.  [Tr. 35-36].  However, the ALJ found that Peters was not
disabled at any point between March 21, 2008, and the date of her decision, December 19, 2011.
[Tr. 12].  Peters does not argue that the ALJ committed error by failing to recognize the amended
onset date, and there is no indication that this choice had any impact on the outcome of the case.

further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at \*7 (E.D. Mich. Dec. 6, 2011) (citing

20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th

Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . .  If the

analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers

to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir.

1994).

## C.     Background

### 1.     Peters' Testimony and Subjective Reports

Peters stated in a February 5, 2011 disability report that the conditions rendering her

disabled were as follows: back and knee pain, arthritis, depression, and anxiety.  [Tr. 104].  She

reported being 5'5" tall and weighing 185 pounds.  [*Id*.].  She completed high school, and has no

specialized job training.  [Tr. 105].  She reported taking several medications, as prescribed by Dr.

Alexander Ruthven, to treat anxiety, depression, back pain, cholesterol, in addition to a muscle

relaxant.  [Tr. 107].

In a March 5, 2011 disability report [Tr. 126-33], Peters stated that her ability to work

was limited because "arthritis in knees and hands causes swelling and pain which limits

mobility" in addition to "limited [back] movement not allowing me to get out of bed." [Tr. 126]. Peters reported that she spends her days reading, doing light housework, watching television, listening to music, using her computer, cooking, and taking care of her hygiene. [Tr. 127]. Her sleep is negatively affected by neck, back, and finger pain. [*Id*.]. She reported some difficulty with cooking, putting on clothing items with clasps, buttons and zippers, and getting up from the toilet. [*Id*.]. She is able to drive a car, shops for food and household items monthly for approximately 150 minutes at a time, and leaves the house daily. [Tr. 129]. She talks on the phone or plays cards with others daily. [Tr. 130]. Peters also said that she has difficulty with light lifting, is unable to get up from the squatting position, and experiences pain from sitting, bending, stair climbing, and using her hands. [Tr. 131].

Peters reported that she experiences anxiety, and takes "nerve pills" to remedy this issue. [Tr. 132]. She uses glasses regularly, but did not report using any other assistive device. She also asserted that several of her medications cause drowsiness and dizziness. [Tr. 133].

In an undated disability appeals report, Peters stated that she was taking a variety of medications for the treatment of anxiety, depression, inflammation, pain, cholesterol, in addition to a muscle relaxant. [Tr. 138]. She reported that she was then experiencing no side effects from any of those medications. [*Id*.]. She also stated that the frequency with which she left home decreased since the prior disability report. [Tr. 139].[2]

At the hearing before the ALJ, Peters stated that her last work was as a packer in a factory. [Tr. 28-29]. She stopped working not because she could not perform work any longer, but because she had gotten laid off. [Tr. 28]. After she was laid off, Peters looked for other work, but "nobody [was] hiring." [Tr. 29]. However, when asked why she believed she was

---

[2] Peters' friend and cousin, Enola Compo, completed a third party function report on March 15, 2011, generally corroborating Peters' allegations. [Tr. 110-17].

disabled, Peters testified that, particularly in the more recent period (i.e., since being laid off), her back has been bothering her. [*Id.*]. When asked what she can no longer do that she used to be able to do, Peters testified, she can no longer lift weight as heavy as she did before. [Tr. 29-30]. Peters indicated that whereas she used to lift between 30-40 pounds at work, she could now lift only 10 pounds. [Tr. 30]. Peters also identified depression as contributing to her inability to work. [Tr. 33]. She said that she recently began taking Vicodin to treat her back pain, but avoids using that medication unless her back is "really hurting, hurting with throbs" for fear of becoming addicted. [Tr. 30-31]. She also complained of knee pain and hand swelling. [*Id.*].

Peters testified that she traveled approximately 60 miles by car to attend the hearing, and that she did not take Vicodin that day. [Tr. 31]. She said that she sometimes leaves the house to visit friends, but has been less apt to do so recently. [*Id.*]. Peters stated that she can stand for 10 to 15 minutes and sit for 15 to 20 minutes comfortably. [Tr. 36]. She also confirmed that she does laundry, cooks, visits with friends, goes grocery shopping, and plays computer solitaire, but stated that doing chores takes longer because of the need to rest. [Tr. 32-34].

> 2.    *Medical Evidence*

Peters' medical reports relate almost entirely to her visits with Dr. Ruthven of Huron Family Practice; the first available records are from April 4, 2007. [Tr. 192-93]. On that date, Dr. Ruthven recorded that Peters' condition was generally within normal limits, but that she suffered from hyperlipidemia, hypertension, and arthritis. [*Id.*]. She again complained of back pain during an August 22, 2007 visit. [Tr. 191]. An x-ray of Peters' spine, interpreted by Dr. John Ference, revealed "diffuse osteopenia," with "grade 1 spondylolisthesis of L4 on 5" with "facet arthropathy at L4/5 and L5/S1." [Tr. 184]. His impression was "mild to moderate degenerative disc disease with a grade 1 spondylolisthesis of L4 on L5." [*Id.*].

Peters repeated her complaints of back pain on August 29, 2007, and Dr. Ruthven prescribed medication to treat pain, inflammation, and depression. [Tr. 182]. She complained of middle back pain and throbbing on September 10, 2007, and Dr. Ruthven prescribed several additional medications to treat depression, relax muscles, and reduce the symptoms of menopause and urinary tract infections. [Tr. 181]. On September 17, 2007, Peters told Dr. Ruthven that she was experiencing nerve pain and "all I want to do is cry." [Tr. 178]. She reported that her back was "feeling better" on September 24, 2007, but Dr. Ruthven nevertheless listed under "impressions" that Peters suffered from depression, hypertension, and low back pain. [Tr. 176].

Dr. Ruthven interpreted an x-ray of Peters' chest on October 15, 2007, concluding that it demonstrated "degenerative changes in the dorsal spine" with "one minor compression," but with "no other abnormality and there is no active disease." [Tr. 171]. He concluded that she suffered from arthritis of the dorsal spine. [*Id.*]. Peters sought further treatment on November 27, 2007, complaining of a bladder infection. [Tr. 161]. Dr. Ruthven diagnosed depression and a urinary tract infection, and made no mention of back pain or arthritis. [Tr. 162]. On March 21, 2008, Dr. Ruthven recorded that Peters suffered from hyperlipidemia, hypertension, and arthritis. [Tr. 157]. She returned again on November 7, 2008, complaining of a kidney or bladder infection; Dr. Ruthven recorded that Peters was suffering from only hypertension and a urinary tract infection. [Tr. 154]. He recorded the same findings on April 14, 2009, and January 22, 2010. [Tr. 216, 219]. On November 11 and 24, 2010, Peters complained of back pain, and was again diagnosed with depression, hypertension, and lower back pain. [Tr. 211, 214]. Dr. Ruthven ordered a chest x-ray, which on November 24, 2010, he interpreted to show scoliosis and "fairly severe osteoarthritis of the dorsal spine." [Tr. 202].

6

On January 24, 2011, Peters visited Dr. Ruthven seeking an x-ray of her hands and knees in support of her pending Social Security claim. [Tr. 194-97]. He again diagnosed Peters with depressive disorder, arthritis, hand and leg joint pain, hypertension, and an "unspecified site sacroiliac region sprain & strain." [Tr. 196]. Dr. Ruthven found that the x-rays revealed minimal scoliosis with "generalized osteoarthritis and disk disease throughout the dorsal spine" and lumbosacral spine, but with "no spondylolisthesis or spondylolysis and there is no compression fracture." [Tr. 199]. He found no abnormality in Peters' hands, and "minimal degenerative changes" in her knees. [*Id*.].

On April 25, 2011, Peters visited Dr. Ruthven complaining of elbow pain following a fall. [Tr. 231]. He prescribed an x-ray of the right elbow, which he found displayed no abnormality. [Tr. 231, 258].

On April 27, 2011, Peters was examined by Dr. R. Scott Lazzara on behalf of the Disability Determination Service. [Tr. 221-25]. Peters' chief complaints included knee, back, and hand pain, scoliosis, anxiety, and depression. [Tr. 221]. She told Dr. Lazzara that her arthritis had gotten progressively worse over time, and that physical therapy did not help. [*Id*.]. She also stated that repetitious activities like vacuuming or doing dishes caused increased pain. [*Id*.]. She further stated that she "gets stiff" if she sits for more than an hour, can stand for one hour, can walk one or two blocks, and cannot lift objects heavier than 25 pounds. [*Id*.].

Dr. Lazzara found that Peters retained full grip strength and dexterity, had no difficulty walking on heels or toes, was able to squat, could hop with difficulty, and showed normal flexibility, including in her joints and spine. [Tr. 223-24]. He diagnosed Peters with arthritis, most likely brought on by factory work. [Tr. 224]. He found mild osteoarthritic disease, particularly affecting the knees, with minimal difficulty performing orthopedic maneuvers. [Tr.

7

224].   His ultimate impression was one of only mild impairment, with a "fair but stable" prognosis.  [Tr. 225].

Peters once again visited Dr. Ruthven on July 25, 2011, for respiratory issues, and was diagnosed with bronchitis.   [Tr. 237].   Dr. Ruthven also recommended that she undergo a radiological exam on her knee and chest.  [Tr. 238].  He also interpreted those results, finding that they revealed no abnormalities in her chest and mild degenerative arthritis of the knee.  [Tr. 257].

On September 15, 2011, Peters complained to Dr. Ruthven of back pain and hot flashes. [Tr. 239].  She described the back pain as throbbing, and stated that it affected her for the prior month.  [*Id*.].  He diagnosed her with bronchitis, anxiety, and "unspecified site sacroiliac region sprain & strain," among other issues.  [Tr. 241].  She returned for a reexamination on September 22, 2011, where she reported still experiencing "strong back pains," but in otherwise much improved condition; Dr. Ruthven's diagnoses remained unchanged.  [Tr. 243].  She returned again on October 6, 2011, for a second reexamination, where she reported feeling well.  [Tr. 247].  Dr. Ruthven's diagnosis nevertheless reflected anxiety, depression, arthritis, back pain, and high blood pressure.  [Tr. 250].

On November 16, 2011, Dr. Ruthven completed a residual functional capacity questionnaire at the request of Peters' attorney.  [Tr. 260-63].  He listed Peters' diagnoses as dorsal spine osteoarthritis, hypertension, and anxiety.  [Tr. 260].  He stated that she experienced spine pain during any kind of activity, including sitting and standing.  [*Id*.].  He also noted that her pain "is chronic in nature and symptoms wax and wane to some extent, but they are persistent."  [*Id*.].

Dr. Ruthven supported his diagnoses by reference to Peters' decreased range of motion in

all directions and tenderness in the mid-dorsal spine area. [*Id*.].  He opined that her symptoms are likely to constantly interfere with her attention and concentration necessary to perform simple work tasks. [Tr. 261].  He also stated that she was incapable of performing even low stress jobs as a result of her chronic pain, and that she would be able to sit for 10 minutes and stand for five minutes before needing to change positions. [*Id*.].  He indicated that Peters would need unscheduled breaks every 30 minutes for a period of 15 minutes, but would not require the ability to shift from sitting to standing or walking at will. [Tr. 262].  He recorded that she could lift less than 10 pounds rarely, and could never lift more than 10 pounds. [*Id*.].  He also stated that she could only rarely twist, stoop, crouch, or climb stairs, and could never climb ladders. [Tr. 263].  He noted that Peters is likely to have good days and bad days regarding her impairments, and that she does not have significant limitations with reaching, handling, or fingering. [*Id*.].  Finally, he found that Peters would likely miss more than four days a month of work, and that her symptoms had been present for approximately three years. [*Id*.].

### 3.    *Vocational Expert's Testimony*

The ALJ asked the VE to imagine an individual of Peters' age, education, and work experience, and "who can perform work at the medium exertional level; cannot climb ladders, ropes, or scaffolding; can frequently climb stairs; and can frequently stoop, kneel, crouch, and crawl." [Tr. 38].  The ALJ then asked the VE to determine whether someone with those limitations could "perform her past work," apparently referencing the jobs discussed in the Vocational Consultant's Case Analysis. [Tr. 38, 146].  This analysis defines Peters' past work as "packager, hand" at a medium exertion level, and "retail sales attendant" at a light level of exertion. [Tr. 146.].  The VE testified that the hypothetical individual would be able to perform both of Peters' prior relevant work positions given that RFC. [Tr. 38].

9

The VE further testified that a hypothetical individual with the aforementioned RFC would also be able to perform the positions of cleaner and kitchen helper, both of which are performed at the medium exertional level.  [Tr. 38].  The ALJ inquired as to whether those positions would still be available if the hypothetical claimant was only able to climb stairs, stoop, kneel, crouch, and crawl occasionally; the VE answered that such a restriction would not affect the availability of the aforementioned positions.  [Tr. 38-39].

The ALJ then inquired as to the jobs available if the hypothetical person was restricted to the light level of exertion.  [Tr. 39].  The VE testified that the retail sales attendant and a "wide range of unskilled work" would still be available.  [Tr. 39].  The VE testified that more than 20,000 retail sales attendant positions are available within a 60 mile radius of Detroit.  [Tr. 40]. Finally, the ALJ inquired as to whether the hypothetical individual could perform any jobs if they were off task up to 20 percent of the workday due to pain and other impairments; the VE testified that such a restriction would preclude all competitive, full-time employment.  [Tr. 40].

### D.    The ALJ's Findings

Following the five-step sequential analysis, the ALJ found Peters not disabled under the Act.  At Step One, the ALJ found that Peters had not engaged in substantial gainful activity since her alleged onset date, March 21, 2008.  [Tr. 14].  At Step Two, the ALJ found that Peters has the following severe impairments: degenerative disc disease and arthritis.  [*Id*.].  At Step Three, the ALJ found that Peters does not have an impairment or combination of impairments that met or medically equaled a listed impairment.  [Tr. 15].

Next, the ALJ assessed Peters' residual functional capacity ("RFC"), finding her capable of light work as defined in 20 CFR 404.1567(b), except that she "cannot climb ladders, ropes or scaffolds.  The claimant can occasionally climb stairs, stoop, kneel, crouch and crawl."  [Tr. 15].

At Step Four the ALJ found that Peters was capable of performing her past relevant work as a retail sales attendant, and was thus not disabled.  [Tr. 18].

### E.       Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider the record as a whole.  *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).

The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

## F.      Analysis

Peters argues that the ALJ erred in two respects: first, by failing to apply the "treating physician rule" and discounting the opinion of Dr. Ruthven, and second, by impermissibly applying the "sit and squirm test" to challenge the plaintiff's credibility. [11 at 8-10]. These challenges to the ALJ's analysis are somewhat interrelated, and the Court will discuss them together.

> 1.      *The ALJ's Application of the Treating Physician Rule and Her Determination that Peters Can Perform Light Work are Not Supported by Substantial Evidence*

Peters' principal argument is that the ALJ failed to properly apply the treating physician rule. She argues that "[t]he Treating Physicians rule requires an ALJ give greater deference to the opinions of treating physicians then [sic] the opinions of non-treating physicians," and that the ALJ failed to follow that principle here. [11 at 9]. While it is true that "[a]s a general matter,

12

an opinion from a medical source who has examined a claimant is given more weight than that

from a source who has not performed an examination," *Gayheart v. Comm'r of Soc. Sec.*, 710

F.3d 365, 375 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1502, 404.1527(c)(1)), "[a]n

administrative law judge may give more weight to the opinions of examining or consultative

sources where the treating physician's opinion is not well-supported by the objective medical

records." *Dyer v. Social Security Admin.*, 568 F. App'x 422, 428 (6th Cir. 2014) (citing

*Gayheart*, 710 F.3d at 376, 379-80). The treating physician rule requires that an ALJ give a

treating physician's opinion controlling weight where it is "well-supported by medically

acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other

substantial evidence in the case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th

Cir. 2004) quoting 20 C.F.R. § 404.1527(d)(2). If an ALJ declines to give a treating physician's

opinion controlling weight, he or she must then determine how much weight to give the opinion,

"by considering a number of factors, including the length of the treatment relationship and the

frequency of examination, the nature and extent of the treatment relationship, supportability of

the opinion, consistency of the opinion with the record as a whole, and any specialization of the

treating physician." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) citing

*Wilson*, 378 F.3d at 544; *see also* 20 C .F.R. § 404.1527(d)(2). The ALJ must give good reasons,

supported by substantial evidence in the record, for the ultimate weight given to a treating source

opinion. *Lester v. Soc. Sec. Admin.*, No. 14-5582, 2015 WL 73601, at *1 (6th Cir. Jan. 7, 2015).

Here, the ALJ failed to properly apply the treating physician rule, one effect of which is

that her determination that Peters can perform "light work," which requires an ability to lift up to

"20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," 20

C.F.R. § 404.1567(b), is not supported by substantial evidence.[3]

The ALJ gave limited weight to the opinion of Dr. Ruthven, notwithstanding his status as Peters' only treating physician, and their longstanding treating relationship. [Tr. 17]. Dr. Ruthven opined, in pertinent part, that Peters could lift weights below 10 pounds only rarely, and could never lift 10 pounds of weight. [Tr. 262]. The ALJ rejected Dr. Ruthven's opinion in that regard as being inconsistent with Peters' hearing testimony that she could lift up to 10 pounds. [Tr. 30]. Regardless, the problem with the ALJ's conclusion, is that by definition, "light work" requires an ability to lift up to 20 pounds, not 10 pounds (though the claimant must also be capable of lifting up to 10 pounds frequently). 20 C.F.R. § 404.1567(b). Thus, the ALJ's reliance on Peters' vague testimony that she could lift up to 10 pounds does not constitute substantial evidence that Peters could, in fact, meet the lifting requirements for "light work."

Even if other evidence existed in the record that supported a finding that Peters could lift up to 20 pounds, the Court will not engage in that sort of post-hoc reasoning. *See Schroeder v. Comm'r of Soc. Sec.*, 2013 WL 1316748, at *13 (E.D. Mich. Mar. 1, 2013) ("post hoc rationalization is not an acceptable substitute for the ALJ's lack of rationale"). Doing so here would be particularly inappropriate because, in discounting Dr. Ruthven's opinion as "overly sympathetic," [Tr. 17], the ALJ placed an improper focus on the events of a single day, while simultaneously failing to adequately evaluate the salient medical records and the lengthy treating relationship between Peters and Dr. Ruthven.

In discounting Peters' credibility and the supportability of Dr. Ruthven's opinion, the

---

[3] Although Peters did not specifically challenge the ALJ's limiting her to "light work" as it relates to its definitional weight requirements, she did challenge the ALJ's consideration of Dr. Ruthven's assessment of the amount of weight she could lift, which bears directly on this question. And, Peters claims she should, at most, be limited to sedentary work (rather than light work), which both she and the Commissioner agree would result in a finding that she is disabled. [13 at 14]. Thus, Peters sufficiently preserved the issue for review at this stage.

14

ALJ relied heavily on Peters' travel to the hearing and her ability to participate in it that particular day. [Tr. 16-17]. Peters challenges this as an improper "sit and squirm test," in which her own efforts to attend a hearing, though difficult for her, are used against her. While the Court does not agree with Peters that the ALJ could not properly consider her ability to travel and participate in the hearing without breaks in evaluating her application for benefits, *see Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990) (noting that the ALJ may rely upon personal observations to discredit a claimant's allegations of disabling symptoms); *Hutchinson v. Comm'r of Soc. Sec.*, No. 12-13213, 2013 WL 4833844, at *5 (E.D. Mich. Sept. 10, 2013) (holding that an ALJ properly considered a claimant's ability to sit for the duration of a hearing in discrediting the claimant's alleged sitting limitations), the ALJ must still fairly weigh that evidence against other evidence in the record, particularly against the treating physician's longitudinal objective medical records. In this case, the ALJ's decision failed to satisfy that requirement.

As noted above, "[a]n administrative law judge may give more weight to the opinions of examining or consultative sources where the treating physician's opinion is not well-supported by the objective medical records." *Dyer*, 568 F. App'x at 428. Here, the ALJ failed to adequately address the objective medical records and other factors (such as length, nature and extent of treating relationship, frequency of examination, etc.) that might support the lifting (and other) limitations imposed by Dr. Ruthven. Over a period of years, Dr. Ruthven's medical records consistently found Peters to be suffering from significant back impairments. [*E.g.*, Tr. 184 (x-ray revealed "diffuse osteopenia," with "grade 1 spondylolisthesis of L4 on 5" with "facet arthropathy at L4/5 and L5/S1," and degenerative disc disease); [Tr. 171] (noting "degenerative changes in the dorsal spine" with "one minor compression" and diagnosing arthritis of the dorsal

15

spine); [Tr. 202] (noting that x-ray revealed scoliosis and "fairly severe osteoarthritis of the dorsal spine"); [Tr. 196] (finding an "unspecified site sacroiliac region sprain & strain"); and [Tr. 199] (x-rays revealed "generalized osteoarthritis and disk disease throughout the dorsal spine" and lumbosacral spine).   Whereas the foregoing records span almost four years' worth of evaluations by Dr. Ruthven with respect to Peters' back condition – from April 2007 through January 2011 – the ALJ's decision discusses only the first two records, from August and October 2007.  [Tr. 18].  In short, the ALJ failed to adequately explain her conclusion that Dr. Ruthven's opinion is "not well supported by the objective [medical records]…"  [Tr. 17].  On remand, the ALJ should fairly consider whether Dr. Ruthven's treating records, including the more recent ones in which he found, for instance, "fairly severe osteoarthritis of the dorsal spine," [Tr. 202], do or do not adequately support his opinions as to Ruthven's functional limitations.

In sum, the ALJ's findings that Dr. Ruthven's assessment of Peters' limitations was the result of an "overly sympathetic" doctor, and was "not well supported by the objective [medical records]" are not supported by substantial evidence.  Nor is her finding that Peters could meet the lifting requirements for "light work" supported by substantial evidence.  Accordingly, remand is required for a proper evaluation of the medical records and other evidence under the treating physician rule.  In light of the parties' agreement that limiting Peters to sedentary work would result in a finding that she is disabled, the ALJ should pay particular attention to any lifting limitations imposed upon her in the RFC.

### III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **[13]** be **DENIED**, Peters' Motion **[11]** be **GRANTED IN PART** to the extent it seeks remand, and **DENIED IN PART** to the extent that it seeks an award of benefits,

and that, pursuant to 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further

proceedings consistent with this Recommendation.


Dated: March 31, 2015                         s/David R. Grand
Ann Arbor, Michigan                           DAVID R. GRAND
                                              United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*,

638 F.2d 947, 949–50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail

to raise others with specificity, will not preserve all the objections a party might have to this

Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991);

*Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to

E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record
and any unrepresented parties via the Court's ECF System to their respective email or First Class
U.S. mail addresses disclosed on the Notice of Electronic Filing on March 31, 2015.

                                              s/Eddrey O. Butts
                                              EDDREY O. BUTTS
                                              Case Manager


17